UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORBERT CHUNG,<br><br>   Plaintiff,<br><br>   v.<br><br>ARTHUR J. GALLAGHER & CO.,<br>ARTHUR J. GALLAGHER<br>COMPENSATION COMMITTEE,<br><br>   Defendants. | Case No. 21-cv-01650<br><br>Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

This ERISA case raises three questions. First, what facts must a plaintiff allege to maintain a claim that his company fired him to interfere with his ERISA benefits? Second, must a plaintiff alleging that a plan violates ERISA's top-hat-plan requirements exhaust this claim before the plan administrator? And third, has this specific plaintiff plausibly alleged that the plan at issue is not a top-hat plan?

As to interference with benefits: like an employment-discrimination plaintiff, a plaintiff asserting that his employer fired him to interfere with the attainment of his ERISA benefits must allege only enough facts to create a plausible inference that his termination was due to this unlawful motive. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–12 (2002).

As to exhaustion: a plaintiff alleging that a plan unlawfully operates as a top-hat plan without meeting the statutory requirements of 29 U.S.C. § 1101(a)(1) need not exhaust this claim before a plan administrator before raising it in federal court.

As to the plausibility of the top-hat allegations: the plaintiff has stated a claim that the plan's primary purpose is not to provide deferred compensation for a select group of management or highly compensated employees.

I

The court takes as true all facts alleged in the amended complaint and draws all reasonable inferences in the plaintiff's favor. *Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 836 (7th Cir. 2008).

Plaintiff Norbert Chung was a high-level executive with defendant Arthur J. Gallagher & Co. ("Gallagher"). [17] ¶ 1.[1] Chung started working at Gallagher in Southern California in 1995 and rose through the ranks. *Id.* ¶¶ 15–21. He eventually became Regional President of the company's Western Region in 2017. *Id.* ¶ 22. Gallagher terminated Chung's at-will employment in 2020. *Id.* ¶ 66.

For the final ten years of his tenure, Chung received awards under a Deferred Equity Participation Plan (the "Plan") that the company offers to fewer than 1% of its employees. *Id.* ¶¶ 32–34. Defendant Arthur J. Gallagher Compensation Committee (the "Committee") administers the Plan as a top-hat plan under 29 U.S.C. § 1101(a). *Id.* ¶¶ 1–3, 52. Unlike ordinary pension plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), top-hat plans are unfunded and exempt from ERISA's requirements relating to "vesting, participation, funding, and fiduciary rules." *Id.* ¶ 52. However, top-hat plans must meet a key criterion that ordinary pension plans need not. A top-hat plan must be maintained by an employer "primarily for the purpose of providing deferred compensation [for] a select group of management or highly compensated employees." *Garratt v. Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001) (quoting 29 U.S.C. §§ 1051(2), 1081(3), 1101(a)(1)).

The Plan's vesting provisions provided for forfeiture of any funds in a participant's account if he or she is terminated before the age of 62. *See* [17] ¶¶ 48, 51. At the time Chung's employment was terminated, he had accrued approximately $5,837,000 in his Plan account. *Id.* ¶ 66. But due to the Plan's forfeiture provisions, Chung received none of those funds because he had not yet turned 62. *See id.*[2]

Chung sought administrative remedies under the Plan's dispute procedures. *Id.* ¶ 89. Though the amended complaint alleges that he exhausted administrative remedies, Chung admits that he did not raise the top-hat-plan claim before the Committee. *Compare id.* ¶ 91, *with* [30] at 21. The Committee denied Chung's claim and later, his appeal, on the interference-with-benefits claim. [17] ¶¶ 89–90.

Chung then brought this suit against Gallagher. [1]. His original complaint had only one count—interference with attainment of ERISA rights. *Id.* ¶¶ 56–67. After Gallagher moved to dismiss, Chung amended his complaint, adding three additional counts, the Committee as a defendant, and 50 John Doe defendants. [9]; [17] ¶¶ 8–12, 92–126. The new counts and corresponding facts allege that the

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the ECF page number.

[2] The amended complaint does not allege Chung's age. However, as the defendants point out, Chung's original complaint does allege his age; he was 56 at the time he was terminated. [1] ¶ 2. Chung does not dispute in response to the motion to dismiss that he was 56 in January 2020.

Committee administered the Plan as a top-hat plan despite it not meeting the requirements of § 1101(a)(1). Thus, according to Chung, he is entitled to equitable relief under ERISA because the Plan was required to conform with the various ERISA requirements for ordinary plans that this Plan does not have. [17] at 27–29.

Both defendants moved to dismiss. Gallagher argues that the amended complaint does not state a claim on which relief can be granted on Count IV, the interference-with-ERISA-rights claim. [24] at 12–16. On Counts I, II, and III, the Committee argues that the amended complaint does not plausibly allege that the Plan is not a top-hat plan, or in the alternative, the Committee argues that Chung failed to exhaust administrative remedies. [26] at 10–19.

II

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a facially plausible claim need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) (citation omitted).

On a motion to dismiss an ERISA case, the court may consider plan documents so long as the complaint references the plan, and the plan is central to plaintiff's claims. *See Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 972 (W.D. Wis. 2007) (citing *Tierney v Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

III

Starting with Gallagher's motion to dismiss Count IV: at the pleading stage, Chung has plausibly alleged that Gallagher terminated his employment to interfere with his rights under ERISA. The pleading standard is quite low, even after *Twombly* and *Iqbal*. The complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted).

3

Courts sometimes analogize interference-with-benefits claims like Chung's to employment-discrimination claims. *E.g.*, *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997); *Deich-Keibler v. Bank One*, 243 F. App'x 164, 170 (7th Cir. 2007). The pleading standard for employment-discrimination claims is extremely low and does not even require the plaintiff to plead facts that align with each element of the prima facie case. As the Supreme Court explained in *Swierkiewicz*, an employment-discrimination complaint need not plead specific facts establishing a prima facie case of discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), only a "short and plain statement of the claim showing that the pleader is entitled to relief." 534 U.S. at 508 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). *Twombly* explicitly left *Swierkiewicz* intact despite abrogating *Conley v. Gibson*, 355 U.S. 41 (1957). *See Twombly*, 550 U.S. at 569–70 (discussing *Swierkiewicz*).

Applying this standard to Chung's amended complaint, the allegations clear Rule 8(a)(2)'s low threshold. The amended complaint alleges that Chung had a large, unfunded account balance that would not vest until he turned 62, that Gallagher had a cost-cutting program targeting for termination employees with large account balances, that Chung had largely strong reviews and objective performance leading up to his termination, and that at least one of his two replacements had a lower account balance than he did. *See* [17] ¶¶ 37, 40, 68–88. Together, these allegations taken as true raise a plausible inference that Gallagher fired Chung to save the more than $5 million it would have owed him had it kept him employed until he turned 62.

Gallagher's responses are unpersuasive. First, it claims that the amended complaint does not allege specific intent to fire Chung so that it would not have to pay him the money. But as in other unlawful-termination contexts, "direct evidence of discriminatory intent is rare." *Amrhein v. Heath Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008); *see Reeves v Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000). Chung does not need to plead direct discrimination to state a plausible claim to relief. *See Amrhein*, 546 F.3d at 858–59.

Second, Gallagher argues that Chung omits from his amended complaint his age at the time of termination, and the true six-year gap between his age when he was fired (56), and the vesting age (62), shows that Gallagher did not terminate him to interfere with his ERISA rights. Chung's "amended complaint supersedes [the] original complaint and renders the original complaint void." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The amended complaint does not allege Chung's age when he was terminated. And in any event, the gap alleged in the original complaint cuts against Chung's claim, but does not make the claim implausible given the other allegations in the amended complaint. *Cf. Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829–30 (7th Cir. 2014) (reversing the grant of a Rule 12(b)(6) motion for overreliance on the amount of time between protected activity and termination at the pleading stage).

4

Taking the amended complaint's allegations as true, Chung has plausibly alleged that Gallagher terminated him to interfere with his ERISA rights.

IV

The Committee moves to dismiss Counts I, II, and III on two grounds. First, it argues that Chung has not exhausted administrative remedies; and second, it argues that Chung has not plausibly alleged that the Plan is not a top-hat plan.

As to the first argument, this case is not an appropriate one to require exhaustion because Chung challenges the legality of the Plan, not a benefits decision. As to the second argument, Chung has plausibly alleged that the plan's "primary purpose" is not providing deferred compensation, so Counts I, II, and III can proceed.

A

District courts have discretion to require ERISA plaintiffs to exhaust their claims through their plan's claims procedures before filing suit. *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 736 (7th Cir. 2012). This so-called "exhaustion requirement" is not in ERISA's text, and the Supreme Court has never endorsed it. *See LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 258–59 & n.* (2008) (Roberts, C.J., concurring in part and concurring in the judgment). But the courts of appeals have "uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013).[3] The Seventh Circuit first created an ERISA exhaustion requirement in 1983 based on "the strong federal policy encouraging private resolution of ERISA-related disputes." *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991) (discussing *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244–45 (7th Cir. 1983)). That "strong federal policy" is also not in ERISA's text. *Id.*

The extra-textual ERISA "exhaustion requirement" originated in "an era of unabashed purposivism." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 901 (6th Cir. 2020) (Thapar, J., concurring). Without any basis in the text, the exhaustion requirement rests on "shaky foundations." *Id.*; *cf. Jones v. Bock*, 549 U.S. 199, 203 (2007) (holding that "crafting and imposing" judge-made exhaustion requirements "exceeds the proper limits on the judicial role").

In any event, requiring exhaustion here would be a poor fit for Chung's claim—that the Committee unlawfully maintains the Plan. The Sixth Circuit, for

---

[3] Chung's claim is not under § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), but the parties do not argue that the Seventh Circuit's exhaustion requirement is any different in this context because Chung relies on different sections of ERISA.

5

example, expressly does *not* require exhaustion where the participant's claim is that his plan is unlawful. *Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 439–40 (6th Cir. 2009). The Fourth Circuit has also adopted *Durand*'s reasoning. *See Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 472 (4th Cir. 2011) (quoting *Durand*, 560 F.3d at 439–40). And by the 1990s, the Third, Ninth, and Tenth Circuits had all created a carveout to their exhaustion requirements for claims based directly on ERISA rather than claims for benefits. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649–50 (7th Cir. 1996) (collecting cases).

The Sixth Circuit's analysis in *Durand* is persuasive. The question of a plan's legality "is one within the expertise of the courts," distinct from the mine-run ERISA case where a participant challenges the calculation of benefits due. *Durand*, 560 F.3d at 439. In the mine-run benefits case, development of an administrative record is critical to facilitate review and ensure that administrators are not abusing their discretion to award benefits. *See Lindemann*, 79 F.3d at 650. Here, while some facts might be relevant to determining the Plan's primary purpose, those facts are more apt for discovery than the plan/administrative record in standard ERISA-benefits cases that mostly deal with claimants' injuries or disabilities. *See generally Houston v. Provident Life & Accident Ins. Co.*, 390 F.3d 990, 992–94 (7th Cir. 2004) (typical ERISA case showing the necessity of an administrative record).

In addition, the Supreme Court recently revisited an extra-textual exhaustion requirement in an analogous context. In *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023), the Court held that respondents in internal proceedings before the FTC and SEC need not wait until their administrative proceedings conclude before arguing in federal district court that their administrative judges have unconstitutional layers of for-cause removal protection, *id.* at 902.[4] Akin to the plaintiffs in *Axon*, Chung challenges the legality of the plan, not the *result* of the claims proceeding. *Cf. id.* at 904. Further, as in *Axon*, the legality of the plan is outside the Committee's expertise; its expertise is in adjudicating claims under the plan as written, not determining whether the plan itself comports with ERISA. *Cf. id.* at 905–06. In light of *Axon*, too, application of the discretionary ERISA exhaustion requirement would be inappropriate in this case.

B

Turning to the substantive allegations: the amended complaint plausibly alleges that the Plan is not a top-hat plan.

---

[4] Though the Supreme Court has treated the test at issue in *Axon* (the *Thunder Basin* test) as a jurisdictional rule, Justice Gorsuch noted in a separate opinion that the rule operates like an exhaustion requirement as applied. *See Axon*, 143 S. Ct. at 913 n.2 (Gorsuch, J., concurring in judgment).

A top-hat plan must be "unfunded and . . . maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1).

Chung's amended complaint states the following about the Plan: its "expressly stated purpose—set out in its very first paragraph—is 'to encourage key employees of [Gallagher and its affiliates] to remain employed with the Company until at least age 62.'" [17] ¶ 40 (alteration in original). The amended complaint further alleges that the Plan "recognizes that '[t]he retention of key employees promotes the interests of the Company and its stockholders by providing continuity of management and leadership and by capitalizing on the investments the Company has made in its key employees over the years.'" *Id.* (alteration in original). Last, the amended complaint states that "[i]n public SEC filings, Gallagher consistently describes the Plan's two objectives as '[p]romot[ing] retention of named executive officers and align[ing] the financial interests of named executive officers with those of stockholders.'" *Id.* (second, third, and fourth alterations in original).

The plain text of the Plan document confirms Chung's allegations. [26-1] at 2. While the Plan's official title is "Arthur J. Gallagher & Co. Deferred Equity Participation Plan," its "purpose" paragraph states "The purpose of this . . . Plan is to encourage key employees of [Gallagher] to remain employed with the Company until at least age 62." *Id.* Nowhere in this paragraph does the Plan document state that the Plan's primary purpose—or even subsidiary purpose—is to provide deferred compensation for key employees. *Id.* Although the Plan provides deferred compensation to participants, Chung has plausibly alleged that this function is not its "primary purpose." The text of the Plan, in fact, suggests the opposite. Taking the complaint's allegations as true, the Plan is not a top-hat plan exempt from ERISA's vesting, participation, funding, and fiduciary rules.

The Committee's arguments in response largely ignore the pleading standard and the text of the Plan document. First, the Committee argues that the Plan's title should dictate the court's conclusion as to its primary purpose. That argument runs into the two problems identified at the outset. At the pleading stage, Chung needs only to plausibly allege that the Plan's primary purpose is not deferred compensation. The amended complaint clears this threshold by looking straight to the first paragraph of the Plan document, which states that the Plan's purpose is employee retention. [26-1] at 2. The purpose paragraph does not mention deferred compensation at all.

Second, the cases on which the Committee relies are wholly distinguishable. An example is *STMicroelectronics, Inc. Pension Restoration Plan v. Santoni*, No. 04-cv-1025, 2005 WL 8167606 (D. Ariz. Sept. 13, 2005). The plans at issue in that case stated expressly that their primary purposes were "providing deferred compensation for 'a select group of highly compensated employees,'" parroting § 1101(a)(1)'s exact language. *Id.* at *2. Though here, Section 21 of the Plan

7

document references this section of ERISA, stating that the Plan "is intended" to be a top-hat plan, the Plan *also* has the separate "purpose" section, which does not reference deferred compensation at all. *Compare* [26-1] at 2, *with id.* at 13. Drawing a reasonable inference in Chung's favor, the Plan's prominently labeled "purpose" section evinces the Plan's primary purpose more than a "plan status" section at the end of the document.

Though cited by the Committee, *Alexander v. Brigham & Women's Physicians Organization, Inc.*, 513 F.3d 37 (1st Cir. 2008), did not address any argument about whether that plan's "primary purpose" was deferred compensation. The district court addressed the point in a footnote, but its decision came after a bench trial and relied in part on trial testimony to reach its conclusion. 467 F. Supp. 2d 136, 139 n.3 (D. Mass. 2006). This case is at the pleading stage.

*Garratt* does not alter this court's conclusion. *Garratt* clarified that a valid top-hat plan can have "multiple broad purposes." 245 F.3d at 946 n.4. But Chung's amended complaint plausibly alleges that the Plan does not have multiple broad purposes, and instead, a *primary* purpose of employee retention, not deferred compensation. [26-1] at 2. *Garratt*'s explanation of a top-hat plan's ability to have "multiple broad purposes" came in the context of a distinction between a top-hat plan and an excess-benefit plan; that explanation is not applicable to whether a plan in isolation qualifies as a top-hat plan or instead, the plan must comply with ERISA's vesting, participation, funding, and fiduciary rules. 245 F.3d at 946 n.4. Further still, *Garratt* undercuts other aspects of the Committee's position. In footnote 6, *Garratt* explained that language in the plan tracking ERISA's statutory language was "inconclusive," especially where other parts of the plan document deviated from the purpose statement that precisely tracks the relevant section of the statute. *Id.* at 948 n.6.

V

For those reasons, Gallagher's and the Committee's motions to dismiss, [23]; [25], are denied. The case will be referred to Judge Gilbert for discovery, scheduling, and settlement.

Dated: August 24, 2023                                  /s/ Martha M. Pacold

8