**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NORBERT CHUNG,<br><br>    *Plaintiff*,<br><br>  v.<br><br>ARTHUR J. GALLAGHER & CO., a Delaware corporation, the ARTHUR J. GALLAGHER COMPENSATION COMMITTEE, SUSAN PIETRUCHA, an individual, VAN McCLELLAN, an individual, ARTHUR J. GALLAGHER & CO. SEVERANCE PLAN,<br><br>    *Defendants*. | Case No.: 21-cv-1650<br><br>Judge Martha M. Pacold<br><br>Mag. Judge Jeffrey T. Gilbert<br><br>**REDACTED PUBLIC VERSION** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
ARTHUR J. GALLAGHER & CO., THE ARTHUR J. GALLAGHER COMPENSATION
COMMITTEE, SUSAN PIETRUCHA, VAN MCCLELLAN, and
THE ARTHUR J. GALLAGHER & CO. SEVERANCE PLAN**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 3

       A.     Chung's performance began to decline long before his termination. .................... 3

       B.     Chung's performance in 2018 continued to be a problem for Mr. Ziebell. ........... 6

       C.     Several incidents in 2019 solidified Ziebell's decision to terminate Chung. ......... 8

       D.     ██████████████████████████████████ .............................................. 11

III.   PROCEDURAL BACKGROUND ................................................................ 13

IV.    LEGAL STANDARD ................................................................................... 15

V.     ARGUMENT ................................................................................................ 16

       A.     The Deferred Equity Participation Plan is a "top-hat" plan. ............................ 16

              1.     "Top-hat" plans are non-qualified deferred compensation plans and exempted from nearly all of ERISA's requirements ................................. 17

              2.     Chung has not, and cannot, prove that the Plan is not a "top-hat" plan. ........................................................................................................ 18

              3.     The primary purpose of the Plan is to defer compensation for a select group of highly compensated or management-level employees. ....................................................................................... 21

                     a.     The Plan's primary purpose is to defer compensation. ................. 21

                     b.     The fact that the Plan is a means to retain executives does not disqualify the Plan from "top-hat" plan status. ...................... 23

              4.     The existence of other deferred compensation plans has no bearing on the Plan's legal status as a top-hat plan. ........................... 26

       B.     The "Plan Fiduciary Defendants" are entitled to summary judgment on Count III. ....................................................................................................... 27

       C.     Chung has not, and cannot, prove that Gallagher violated ERISA § 510 ........... 29

              1.     Chung cannot establish a prima facie case of interference. ..................... 30

2.      Gallagher terminated Chung due to performance concerns....................... 33

3.      Chung has not, and cannot, meet his burden of proving pretext............... 35

D.      Chung has not, and cannot, prove he is entitled to severance benefits under the Severance Plan. ....................................................................................... 37

1.      Chung fails to allege he is eligible for severance benefits under the Severance Plan. ...................................................................................... 37

2.      No "decision" was made to deny Chung severance benefits at the time of his termination. ............................................................................. 39

E.      Chung cannot prove Mr. McClellan and Ms. Pietrucha breached any fiduciary duty. ....................................................................................... 43

1.      There is no evidence that Mr. McClellan or Ms. Pietrucha acted in a fiduciary capacity prior to Chung's termination. ................................... 43

2.      Chung was never eligible for severance, so Mr. McClellan and Ms. Pietrucha could not "conceal" his eligibility from him. ........................... 44

3.      McClellan and Pietrucha are not fiduciaries to the DEPP. ....................... 45

4.      Chung's breach of fiduciary duty claim against Mr. McClellan and Ms. Pietrucha is duplicative of Count V and time-barred. ...................... 46

VI.      CONCLUSION................................................................................................... 47

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Abuelyaman v. Ill. State Univ.*,
    667 F.3d 800 (7th Cir. 2011) ...................................................................................................39

*Accardi v. IT Litig. Tr. (In re IT Grp., Inc.)*,
    448 F.3d 661 (3d Cir. 2007).....................................................................................................18

*Alexander v. Brigham & Women's Phys. Org., Inc.*,
    467 F. Supp. 2d 136 (D. Mass. 2006) ...............................................................................17, 23

*Alexander v. Brigham & Women's Physicians Org., Inc.*,
    513 F.3d 37 (1st Cir. 2008)........................................................................................19, 20, 21

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
    99 F.4th 928 (7th Cir. 2024) ...................................................................................................29

*Barden v. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund*,
    12 F. App'x 412 (7th Cir. 2001) ..................................................................................23, 25, 41

*Barnhardt v. Open Harvest Coop.*,
    742 F.3d 365 (8th Cir. 2014) ...................................................................................................34

*Bartnett v. Abbott Labs.*,
    492 F. Supp. 3d 787 (N.D. Ill. 2020) .......................................................................................24

*BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*,
    900 F.3d 529 (7th Cir. 2018) ...................................................................................................39

*Brooks v. Pactiv Corp.*,
    729 F.3d 758 (7th Cir. 2013) ...................................................................................................44

*Cameron v. Idearc Media Corp.*,
    685 F.3d 44 (1st Cir. 2012)......................................................................................................34

*Carlson v. Northrop Grumman Severance Plan*,
    67 F.4th 871 (7th Cir. 2023) ..............................................................................................38, 42

*Carlson v. Northrop Grumman Severance Plan*,
    No. 22-1764, 2022 U.S. Dist. LEXIS 59142 (N.D. Ill. Mar. 31, 2022) (7th Cir. 2023)..........41

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................................15

*Cement & Concrete Workers Council Pension Fund v. Ulico Cas. Co.*,
    387 F. Supp. 2d 175 (E.D.N.Y. 2005) *aff'd* 199 F. App'x 29 (2d Cir. 2006) ........................29

*Chojnacki v. Georgia-Pacific Corp.*,
   108 F.3d 810 (7th Cir. 1997) ........................................................................................40

*Colburn v. Hickory Springs Mfg. Co.*,
   448 F. Supp. 3d 512 (E.D.N.C. 2020)...........................................................................20

*Coldwate v. Alcatel-Lucent USA, Inc.*,
   No. 10-CV-4918, 2012 U.S. Dist. LEXIS 149927 (N.D. Ill. Oct. 18, 2012)...................32, 33

*Cover v. OSF Healthcare Sys.*,
   697 F. Supp. 3d 803 (N.D. Ill. 2023) .............................................................................16

*Degrave v. Nat'l Automatic Merch. Ass'n*,
   No. 04 C 8147, 2007 U.S. Dist. LEXIS 4655 (N.D. Ill. Jan. 19, 2007) ..................................34

*Demery v. Extebank Deferred Comp. Plan (B)*,
   216 F. 3d 283 (2d Cir. 2000).................................................................................19, 20, 23

*Est. of Gifford v. Operating Eng'rs 139 Health Ben. Fund*,
   126 F.4th 509 (7th Cir. 2025) .......................................................................................40

*Fishman v. Zurich Am. Ins. Co.*,
   539 F. Supp. 2d 1036 (N.D. Ill. 2008) ....................................................................16, 19, 20, 21

*Galvan v. State*,
   117 F.4th 935 (7th Cir. 2024) ...............................................................................35, 36, 37

*Garratt v. Knowles*,
   245 F.3d 941 (7th Cir. 2001) ...............................................................................14, 18, 25, 28

*Grant v. Trs. of Ind. Univ.*,
   870 F.3d 562 (7th Cir. 2017) ........................................................................................15

*Grottkau v. Sky Climber, Inc.*,
   79 F.3d 70 (7th Cir. 1996) ...........................................................................................37

*Hamann v. Int'l Harvester Co.*,
   No. 84 C 10552, 1985 U.S. Dist. LEXIS 14343 (N.D. Ill. Oct. 30, 1985) ........................30, 32

*Hamrick v. E.I. DU Pont de Nemours & Co.*,
   No. 23-238-JLH, 2024 U.S. Dist. LEXIS 17497 (D. Del. Jan. 31, 2024) ..............................29

*Hernandez v. Midland Credit Mgmt.*,
   No. 04 C 7844, 2006 U.S. Dist. LEXIS 10527 (N.D. Ill. Mar. 14, 2006) ..............................24

*Hoak v. Plan Adm'r of the Plans of NCR Corp.*,
   717 F. Supp. 3d 1280 (N.D. Ga. 2024)......................................................................24, 25

*Hong v. Children's Mem'l Hosp.*,
993 F.2d 1257 (7th Cir. 1993) ...............................................................................36

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)...............................................................................................28

*IBM v. United Microelectronics Corp.*,
764 F. App'x 9 (2d Cir. 2019) ...............................................................................38

*Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*,
988 F.3d 948 (7th Cir. 2021) .................................................................................35

*In re Cheeks (Hulbert v. Cheeks)*,
467 B.R. 136 (Bankr. N.D. Ill. 2012) ..............................................................18, 22

*Isbell v. Allstate Ins. Co.*,
418 F.3d 788 (7th Cir. 2005) .....................................................................30, 31, 34

*IT Grp., Inc. v. Bookspan (In re IT Grp., Inc.)*,
305 B.R. 402 (Bankr. D. Del. 2004) ......................................................................20

*Johnson v. Roehl Props. of Ind. LLC*,
No. 2:10-cv-81, 2012 U.S. Dist. LEXIS 47697 (N.D. Ind. Apr. 4, 2012) ...............32

*Jones v. Merchs. & Farmers Bank of Holly Springs*,
No. 3:18-cv-145-RP, 2019 U.S. Dist. LEXIS 96814 (N.D. Miss.
June 10, 2019)...............................................................................................16, 19, 28

*Kannapien v. Quaker Oats Co.*,
507 F.3d 629 (7th Cir. 2007) ...........................................................................43, 46

*Karazanos v. Navistar Int'l Transp. Corp.*,
948 F.2d 332 (7th Cir. 1991) .................................................................................36

*KBC Asset Mgmt. NV v. Discover Fin. Servs.*,
No. 23-cv-06788, 2025 U.S. Dist. LEXIS 61675 (N.D. Ill. Mar. 31, 2025) ...........24

*Keefe v. LendUs, LLC*,
No. 20-195, 2020 U.S. Dist. LEXIS 99924 (D.N.H. June 8, 2020) ..................23, 25

*Keller v. United States*,
58 F.3d 1194 (7th Cir. 1995) .................................................................................18

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
No. 24-1942, 2025 U.S. App. LEXIS 19662 (7th Cir. Aug. 5, 2025) ....................37

*Kramer v. Am. Elec. Power Exec. Severance Plan*,
No. 2:21-cv-5501, 2023 U.S. Dist. LEXIS 65544 (S.D. Ohio Apr. 13, 2023).....19, 20

*Laslie v. Town of Cicero*,
No. 20-cv-1831, 2021 U.S. Dist. LEXIS 88760 (N.D. Ill. May 10, 2021)...............................17

*Laurent v. PricewaterhouseCoopers LLP*,
No. 06-2280 (JPO), 2018 U.S. Dist. LEXIS 8995 (S.D.N.Y. Jan. 19, 2018).........................29

*Little v. Cox's Supermarkets*,
71 F.3d 637 (7th Cir. 1995) ........................................................................................30, 32

*Lynch v. Alpharma, Inc.*,
No. 05 C 3065, 2006 U.S. Dist. LEXIS 23678 (N.D. Ill. Apr. 27, 2006)..............................31

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).................................................................................................................31

*Melendez v. N.Y. Foundling, Inc.*,
No. 17-CV-6162 (KMK), 2019 U.S. Dist. LEXIS 36883 (S.D.N.Y.
Mar. 6, 2019).................................................................................................................38, 40

*Meredith v. Navistar*,
935 F.2d 124 (7th Cir. 1991) ...................................................................................................35

*Mohammed v. Prudential Ins. Co. of Am.*,
No. 19 C 3258, 2020 U.S. Dist. LEXIS 141394 (N.D. Ill. Aug. 7, 2020).........................46, 47

*Montenelli v. Menard, Inc.*,
No. 18 C 7483, 2019 U.S. Dist. LEXIS 249199 (N.D. Ill. July 30, 2019) ..............................17

*Myles v. United States*,
416 F.3d 551 (7th Cir. 2005) ...................................................................................................27

*Ollison v. Gossett*,
136 F.4th 729 (7th Cir. 2025) ..................................................................................................39

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH*,
972 F.2d 753 (7th Cir. 1992) ...................................................................................................45

*Paul v. RBC Cap. Mkts. LLC*,
No. C16-5616 RBL, 2018 U.S. Dist. LEXIS 128232 (W.D. Wash. July 31, 2018)................28

*Peele v. Country Mut. Ins. Co.*,
288 F.3d 319 (7th Cir. 2002) ...................................................................................................36

*Pegram v. Herdrich*,
530 U.S. 211 (2000)...............................................................................................28, 43, 44, 45

*Ptasznik v. St. Joseph Hosp.*,
464 F.3d 691 (7th Cir. 2006) ...................................................................................................35

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
    541 U.S. 1 (2004)..................................................................................................20, 27

*Ritchie Capital Mgmt., L.L.C. v. Kermath*,
    No. 15 C 8021, 2016 U.S. Dist. LEXIS 174338 (N.D. Ill. Dec. 13, 2016) ............................38

*Ruttenberg v. U.S. Life Ins. Co.*,
    413 F.3d 652 (7th Cir. 2005) ................................................................................................38

*Sample v. Aldi, Inc.*,
    61 F.3d 544 (7th Cir. 1995) ..................................................................................................35

*Schaffer ex. rel Schaffer v. Weast*,
    546 U.S. 49 (2005)................................................................................................................16

*Scott v. AT&T Inc.*,
    No. 20-cv-07094-JD, 2025 U.S. Dist. LEXIS 130661 (N.D. Cal. July 9, 2025).....................29

*Sec'y of Lab. v. Macy's, Inc.*,
    No. 17-541, 2022 U.S. Dist. LEXIS 23849 (S.D. Ohio Feb. 10, 2022) .................................29

*Shanahan v. City of Chicago*,
    82 F.3d 776 (7th Cir. 1996) ..................................................................................................39

*Sikora v. UPMC*,
    876 F.3d 110 (3d Cir. 2017)........................................................................................16, 19, 21

*Skiba v. Ill. Cent. R.R. Co.*,
    884 F.3d 708 (7th Cir. 2018) ................................................................................................15

*Smith v. Lutheran Univ. Ass'n*,
    No. 24-1710, 2024 U.S. App. LEXIS 31698 (7th Cir. Dec. 13, 2024)...................................15

*Spitz v. Berlin Indus.*,
    No. 93 C 6355, 1994 U.S. Dist. LEXIS 6277 (N.D. Ill. May 12, 1994) ................................18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..............................................................................................................46

*Steele v. City of Bluffton*,
    31 F. Supp. 2d 1084 (N.D. Ind. 1998) ..................................................................................31

*Sumpter v. Metro Life Ins. Co.*,
    683 F. App'x 519 (7th Cir. 2017) .........................................................................................46

*Sutton v. Bellsouth Telecomms., Inc.*,
    189 F.3d 1318 (11th Cir. 1999) ............................................................................................44

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981)................................................................................................33

*Van Bergen v. Fastmore Logistics, LLC*,
    No. 21 C 5796, 2022 U.S. Dist. LEXIS 98570 (N.D. Ill. June 2, 2022) ...............................28

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)................................................................................................46

*White v. City of Chicago*,
    829 F.3d 837 (7th Cir. 2016) ...............................................................................15

*Williams v. Aetna Ins. Co.*,
    509 F.3d 317 (7th Cir. 2007) ...............................................................................43

*Wolf v. Riverport Ins. Co.*,
    132 F.4th 515 (7th Cir. 2025) ...............................................................................38

*Zekucia v. Ounce of Prevention Fund*,
    No. 19 C 8081, 2020 U.S. Dist. LEXIS 260211 (N.D. Ill. Nov. 6, 2020)...............................38

**RULES**

Fed. R. Civ. P. 10(a) ...............................................................................................27

Fed. R. Civ. P. 56...............................................................................................15, 38

Fed. R. Civ. P. 12...............................................................................................38

**STATUTES**

26 U.S.C. § 401...............................................................................................13, 17, 18, 26

26 U.S.C. § 415...............................................................................................17

29 U.S.C. § 1002(1) ...............................................................................................37

29 U.S.C. § 1021(d)(1) ...............................................................................................14

29 U.S.C. § 1051(2) ...............................................................................................21

29 U.S.C. § 1082...............................................................................................14

29 U.S.C. §§ 1101(a)(1), 1051(2), 1081(a)(3) ...............................................................17, 18, 23

29 U.S.C. § 1104(a)(1)...............................................................................................45

29 U.S.C. § 1113...............................................................................................29, 47

29 U.S.C. § 1140.................................................................................................................29

29 U.S.C. § 1132(a)(3)........................................................................................................46

Internal Revenue Code § 401(a) ........................................................................................17

Internal Revenue Code § 415........................................................................................26, 27

**OTHER AUTHORITIES**

29 C.F.R. § 2520.104-23(b)(1) ...............................................................................21, 22, 26

I.R.S. Priv. Ltr. Rul., 1980 PLR LEXIS 6695 (Dec. 30, 1980). ......................................19

*GAO Report to Congressional Requesters, Private Pensions: IRS and DOL Should
    Strengthen Oversight of Executive Retirement Plans* (Jan. 2020),
    https://www.gao.gov/assets/gao-20-70.pdf...............................................................1

I.R.S. Rev. Proc. 92-64, 1992 IRB LEXIS 380 (July 1992).............................................19

U.S. Dep't of Lab. Opinion Letter 90-14A at 2, n.1, 1990 ERISA LEXIS 12, at *3-4 n.1
    (May 8, 1990)...........................................................................................................23

## I.      INTRODUCTION

Arthur J. Gallagher & Co. ("Gallagher" or the "Company") is an American global insurance brokerage and risk management services firm.  Gallagher offers various benefits to its employees, but central to this case is the Arthur J. Gallagher & Co. Deferred Equity Participation Plan (the "Plan" or "DEPP").  The Plan is a non-qualified, deferred compensation plan offered only to a select group of Gallagher's high-level management employees, colloquially known as a "top-hat" plan.  "Top-hat" plans are a common tool that publicly-traded companies use to offer deferred compensation to their executive-level employees.[1]  Awards under the Plan are subject to all the terms and conditions of the Plan, including the fact that awards generally do not vest unless the employee remains employed by Gallagher until age 62.

Plaintiff Norbert Chung ("Chung") worked for Gallagher's subsidiary, Gallagher Benefit Services ("GBS"), for many years.  Chung admits that, at all times during his employment with Gallagher, he was an "at-will" employee who could be terminated "at any time" and "for any reason."  Over the course of his career, Chung received equity awards under the Plan. When he accepted these awards, he acknowledged and agreed to all the terms of the Plan, including that the benefits were unvested, and that receipt of these awards did not guarantee future employment or receipt of the benefits.

In January 2020, Gallagher terminated Chung due to years of well-documented performance problems. Chung's boss, Bill Ziebell (and others) brought these performance deficiencies to Chung's attention repeatedly in the years leading up to his termination, ▮▮▮▮

---

[1]      A 2017 report published by the United States Government Accountability Office confirms that more than 400 of the 500 largest U.S. public companies provided executive retirement plans ("top-hat" plans) to almost 2,300 top executives. *See GAO Report to Congressional Requesters, Private Pensions: IRS and DOL Should Strengthen Oversight of Executive Retirement Plans* (Jan. 2020), https://www.gao.gov/assets/gao-20-70.pdf.

███████████████████████████████████████████████ As a result of his termination, Chung forfeited his unvested equity awards in the Plan. Chung has since filed three complaints, asserting different and inconsistent theories about his termination. But none of his legal theories enable him to recoup the unvested equity awards he forfeited because he failed at his job.

First, Chung attempts to invalidate the Plan's forfeiture provision by claiming the Plan is not, in fact, a "top-hat" plan. Though he *admits* the Plan satisfies nearly every characteristic of a "top-hat" plan—he contends it fails to meet the "top-hat" exemption because its "purpose is to retain high-ranking executives" rather than to "defer compensation." This argument fails. The law is clear—the *primary* purpose of the Plan is the benefit provided, not its use. The evidence confirms that the only benefit provided by the Plan is deferred compensation. To the extent that the Plan helps retain Gallagher executives, this weighs *in favor* of classifying the Plan as a top-hat plan, rather than disqualifying the Plan from top-hat plan status. The Court should confirm what is obviously true and supported by the evidence—the Plan is a "top-hat" plan.

Second, Chung contends Gallagher unlawfully terminated him to prevent him from receiving his unvested Plan benefits in violation of ERISA § 510. But to prevail on this § 510 claim, Chung must prove that Gallagher terminated him with the "specific intent" to prevent him from receiving his unvested Plan benefits. Chung has no evidence that his unvested benefits had anything to do with the decision to terminate him. ██████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████. Significantly, the question for the Court is not whether Chung's performance was, in fact, poor, but rather did whether Mr. Ziebell *honestly believe* Chung was not performing well at the time of termination.

-2-

Chung has no evidence to dispute Mr. Ziebell's negative perception of his performance and cannot meet his heavy burden of proof on this claim.

Third, and finally, Chung also asserts an entirely different theory about his termination— that he was entitled to severance benefits under the Arthur J. Gallagher & Co. Severance Plan ("Severance Plan") and, therefore, his DEPP benefits should vest as a result. But not every employee is entitled to benefits under the Severance Plan. Only those "eligible employees" who are involuntarily terminated due to "lack of work, rearrangement of work, or a reduction in workforce" may even be *considered* for benefits under the Severance Plan. Chung does not allege he was terminated for one of these three reasons, which is fatal to his claim. Indeed, as a simple logical inconsistency, Chung cannot argue on the one hand that he was *lawfully terminated* for lack of work, rearrangement of work, or a reduction in force while arguing on the other hand that he was *unlawfully terminated* to deprive him of his Plan benefits in violation of ERISA § 510. Moreover, the evidence confirms that Chung was never considered for severance benefits under the Severance Plan because he was terminated for unsatisfactory performance — plain and simple.

Defendants are entitled to summary judgment on all claims.

## II.     FACTUAL BACKGROUND

### A.      Chung's performance began to decline long before his termination.

-3-

-4-





**B.** <u>**Chung's performance in 2018 continued to be a problem for Mr. Ziebell.**</u>

-7-



C. **<u>Several incidents in 2019 solidified Ziebell's decision to terminate Chung.</u>**

-9-

-10-





**D.**

-12-



███████████████████████████████████████████████████

███████████████████████████████████████████████████

████

## III.   PROCEDURAL BACKGROUND

Chung initially filed suit in March 2021 claiming Gallagher improperly terminated him to prevent him from attaining his unvested Plan benefits in violation of ERISA § 510, 29 U.S.C. § 1140. (Dkt. 1, Original Complaint ("OC") ¶ 61.)  Notably, in his Original Complaint, Chung alleged that the Plan is "**a non-qualified plan** under the terms of 26 U.S.C. § 401," and that the Plan *is* a "'**top-hat plan,'** which is a plan that 'is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.'" (OC ¶ 38.)

Chung amended his complaint in July 2021. (Dkt. 17, First Amended Complaint ("FAC").) While he asserted the same ERISA § 510 claim against Gallagher, he added the Athur J. Gallagher Compensation Committee ("Committee") as a defendant and asserted three new and entirely inconsistent claims. (*Id.*) Despite his original allegation that the Plan *is* a top-hat plan (OC ¶ 38), Chung reversed course and alleged the exact *opposite* in the FAC claiming that "the Plan *is not* a 'top-hat plan.'" (FAC ¶ 103.) Chung also alleged that the Committee and other unserved and unidentified "Plan Fiduciary Defendants" breached their fiduciary duties by administering the Plan as a top-hat plan and that "Defendants" failed to furnish him with certain notices that are required only if the Plan is not a "top-hat" plan. (FAC, Counts II, III.)

Chung amended his complaint for a second time in November 2024, which is now the operative complaint. (Dkt. 172, Second Amended Complaint ("SAC").) Chung maintains his original claim under ERISA § 510 that Gallagher unlawfully terminated him "for the purpose of"

interfering with his attainment of rights under the Plan. (SAC ¶ 162, Count IV.) Chung also seeks a declaration that the Plan is not a top-hat plan and, therefore, his unvested Plan benefits are fully vested and not subject to forfeiture. (SAC ¶ 128, Count I.) Chung alleges that "Defendants" failed to furnish him with a certain notice about the Plan, and the "Plan Fiduciary Defendants" violated their fiduciary duties by operating the Plan as a top-hat plan, when Chung contends it is not. (SAC ¶¶ 130-135, Count II; ¶¶ 140-141, Count III).[8]

With Count V, however, Chung has changed course again.   For the first time in his SAC, Chung asserts yet another new theory about his termination—that he was lawfully terminated, but that he was "entitled to severance pay under the Severance Plan." (SAC ¶ 170, Count V.) Significantly, in both his Original Complaint and FAC, he alleged the opposite—that he was *not* terminated "in a manner that entitles a participant to severance benefits under the Severance Plan." (OC ¶ 41; FAC ¶¶ 47, 48.)  Nevertheless, Chung now contends that prior to his termination ("[a]t some point between October 2019 and January 2020") Ms. Pietrucha and Mr. McClellan decided to deny Chung severance benefits and this supposed "decision" was arbitrary and capricious. (SAC ¶ 171.)  Further, Chung claims Ms. Pietrucha and Mr. McClellan breached their "fiduciary duties" because they supposedly "concealed": (1) that Chung was eligible for severance; (2) that if Chung received severance, his DEPP benefits would vest; and (3) that McClellan and Pietrucha

---

[8]      In Count II, Chung alleges that "Defendants" failed to furnish him with certain notices under 29 U.S.C. § 1021(d)(1), ERISA § 101(d)(1), which generally requires an employer maintaining a qualified ERISA plan to provide participants notice if the employer fails to make a required payment to meet the minimum funding standard under 29 U.S.C. § 1082, ERISA § 302. (SAC ¶¶ 130-135.) Chung admits, however, that top-hat plans are exempt from "ERISA's substantive requirements, including those relating to . . . funding." (SAC ¶¶ 2, 57); *Garratt* v. *Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001) (top hat plans are exempt from ERISA's funding rules). Further, Chung alleges that the Plan is "a non-qualified plan." (SAC ¶ 46.) Thus, Count II is wholly derivative of, and contingent upon, Count I, and otherwise fails. Unlike Counts III, IV, and V, Chung does not specify which "Defendants" are subject to Counts I and II. Accordingly, all Defendants move for summary judgment on Counts I and II.

-14-

(allegedly) decided to deny Chung severance benefits at some point between October 2019 and January 2020. (Count III.)

## IV.    LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment generally bears the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. However, "[i]n moving for summary judgment a defendant need not submit any evidence, including sworn declarations, negating the claims on which the plaintiff bears the burden of proof." *Smith v. Lutheran Univ. Ass'n*, No. 24-1710, 2024 U.S. App. LEXIS 31698, at *7 (7th Cir. Dec. 13, 2024).

To defeat summary judgment, the party opposing it must make a "showing sufficient" through "specific, admissible evidence" to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by speculation or conjecture will not suffice, nor will the mere scintillas of evidence. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708 (7th Cir. 2018); *Grant*, 870 F.3d at 571. Construing the evidence and facts supported by the record in favor of the nonmoving party, the court gives the nonmoving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

-15-

## V.     ARGUMENT

### A.     The Deferred Equity Participation Plan is a "top-hat" plan.

While the Court previously determined that Chung had "plausibly" *alleged* that the Plan is not a "top-hat" plan (Dkt. 41), that is of course not a "final determination" as to whether the Plan is or is not a "top-hat" plan. (*See* Dkt. 208 (noting that this Court's decision on Chung's motion to dismiss "is not a final determination one way or the other").) Now that the parties are at summary judgment, "the plausibility standard is irrelevant." *Cover v. OSF Healthcare Sys.*, 697 F. Supp. 3d 803, 808 (N.D. Ill. 2023). Rather, Chung now bears the burden of ***proving*** that the Plan is ***not*** a "top-hat" plan.[9] The Court no longer owes deference to Chung's mere allegations, which are not supported by the record. Indeed, as Magistrate Judge Gilbert held: "[t]here is other significant contrary evidence in the record that suggests the District Judge could conclude the evidence supports the conclusion that the Deferred Equity Plan is, in fact and as a matter of law, a top-hat plan." (Dkt. 208 at 4.); *Jones v. Merchs. & Farmers Bank of Holly Springs*, No. 3:18-cv-145-RP, 2019 U.S. Dist. LEXIS 96814, at *10-11 (N.D. Miss. June 10, 2019) ("whether the Plan qualifies as a 'top-hat' plan is a question of law," although the factors underlying whether it qualifies as a 'top-hat' plan—such as selectivity and high compensation—"may constitute fact issues").

Chung originally alleged that the Plan ***is a "top-hat" plan*** (SF ¶ 135 *citing* OC ¶ 35), but now he alleges the opposite—that the Plan ***is not*** a "top-hat" plan (SAC ¶ 127). Chung's

---

[9]     *See Schaffer ex. rel Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (the "ordinary default rule" is that "plaintiffs bear the risk of failing to prove their claims," and "the person who seeks court action should justify the request," meaning "the plaintiffs bear the burdens on the elements in their claims"); *Sikora v. UPMC*, 876 F.3d 110, 113 (3d Cir. 2017) ("[Plaintiff] has the burden of showing that the Plan is not a top-hat plan to obtain relief under ERISA."); *Fishman v. Zurich Am. Ins. Co.*, 539 F. Supp. 2d 1036, 1046 (N.D. Ill. 2008) (granting summary judgment to defendant where plaintiff failed to present evidence demonstrating that the plan was not a "top-hat" plan).

inconsistent allegations alone undercut his claim. *Montenelli v. Menard, Inc.*, No. 18 C 7483, 2019 U.S. Dist. LEXIS 249199, at *4-5 (N.D. Ill. July 30, 2019) (after amendment, initial allegations may be used as evidence of the facts); *Laslie v. Town of Cicero*, No. 20-cv-1831, 2021 U.S. Dist. LEXIS 88760, at *27 (N.D. Ill. May 10, 2021) (noting that an "earlier pleading may come back to bite" a party because the admission does not disappear, but acts as an evidentiary admission). Nevertheless, Chung cannot meet his burden because the evidence confirms the Plan is a quintessential "top-hat" plan. The Court should reject Chung's self-serving attempt to challenge the Plan's legal status as a "top-hat" plan without regard to the practical impact on all the other Plan participants who are not parties to this lawsuit.

### 1. "Top-hat" plans are non-qualified deferred compensation plans and exempted from nearly all of ERISA's requirements.

A "qualified plan" is a plan that provides participants an opportunity to save for retirement and defer taxation of income and can include employer-provided benefits if the plan meets the requirements set forth in the Internal Revenue Code ("IRC") § 401(a). However, the IRC limits the value of benefits that may be paid under "qualified" plans. 26 U.S.C. §§ 401(a)(17), 415. On the other hand, a "top-hat" plan is a type of "non-qualified plan" that is: (1) "unfunded" and (2) maintained by an employer "primarily" for the purpose of providing deferred compensation, (3) for a "select group of management or highly compensated employees." 29 U.S.C. §§ 1101(a)(1), 1051(2), 1081(a)(3). In short, "[t]op hat plans are designed to provide certain [management or highly compensated] employees with payments *over and above* the benefits provided by 'qualified' employee benefit plans—*i.e.*, plans that are eligible for favorable tax treatment, such as [the employer's] standard retirement plan." *Alexander v. Brigham & Women's Phys. Org., Inc.*, 467 F. Supp. 2d 136, 142-43 (D. Mass. 2006) ("*Alexander I*") (emphasis added) (noting the "need

for top-hat plans when employers wish to provide a higher level of deferred compensation to their employees. . . .”).

As Chung alleges and admits (SAC ¶¶ 2, 57), “top-hat” plans are exempt from ERISA's funding, vesting, participation, disclosure, fiduciary, and other requirements that govern non-top-hat plans. 29 U.S.C. §§ 1101(a)(1), 1051(2), 1081(a)(3); *Garratt*, 245 F.3d at 946 n.4 (“top-hat” plans are “exempted from ERISA's vesting, participation, funding, and fiduciary rules”). And, because “top-hat” plans are not subject to ERISA's vesting rules, if an employee is terminated before their benefit vests, the benefit is forfeited. *See Spitz v. Berlin Indus.*, No. 93 C 6355, 1994 U.S. Dist. LEXIS 6277, at *6 (N.D. Ill. May 12, 1994). In this regard, employers routinely design “top-hat” plans so that the benefits do not vest until participants achieve certain years of service, attain a certain age, or satisfy certain performance goals so that participants can delay taxation on this deferred compensation. *See id.*; *Accardi v. IT Litig. Tr. (In re IT Grp., Inc.)*, 448 F.3d 661, 669 n.4 (3d Cir. 2007).

### 2. Chung has not, and cannot, prove that the Plan is not a “top-hat” plan.

Chung admits the Plan is a “*non-qualified* plan under the terms of 26 U.S.C. § 401” (SF ¶ 136; SAC ¶ 49) and that the Plan meets nearly every characteristic of the “top-hat” plan exemption. (SF ¶¶ 138, 143-145, 151); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (judicial admissions “may not be controverted at trial”). The evidence confirms that the Plan meets all the characteristics of a top hat plan.

Chung admits the Plan is “unfunded,” and it is. (SF ¶ 138.) The Plan has a “rabbi trust,” Gallagher maintains only unfunded bookkeeping accounts for Plan participants, and the rabbi trust's assets are subject to claims of the Company's creditors. (SF ¶¶ 139-142); *see In re Cheeks (Hulbert v. Cheeks)*, 467 B.R. 136, 153 (Bankr. N.D. Ill. 2012) (A “rabbi trust” is “the most

-18-

common mechanism" to pay deferred compensation.); I.R.S. Rev. Proc. 92-64, 1992 IRB LEXIS 380 (July 1992); I.R.S. Priv. Ltr. Rul., 1980 PLR LEXIS 6695 (Dec. 30, 1980).

Chung admits the Plan is maintained solely for a select group of management or highly compensated employees. (SF ¶¶ 143-145, 151; SAC ¶ 42 (alleging only highly-paid employees and executives are eligible for awards under the Plan); Dkt. 127, at 7, n.3.) And the evidence is in accord. The Plan was designed to be limited to a "select group of highly compensated or management employees" and, at its inception in 2001, only had 19 participants. (SF ¶¶ 146, 157, 162, 164.) Since then, the Plan has continued to be extremely limited. Though Gallagher employs tens of thousands of people, from 2001 to June 2024, only 157 United States-based employees have *ever* accrued a benefit in the Plan. (SF ¶¶ 147, 148.) From 2015 to 2024, fewer than 0.47% of Gallagher's U.S. employees accrued an award under the Plan each year. (SF ¶¶ 149, 150.) Thus, the Plan unquestionably meets the "select group" criteria. *See Fishman*, 539 F. Supp. 2d at 1046 (1% participation is "quantitatively select"); *Kramer v. Am. Elec. Power Exec. Severance Plan*, No. 2:21-cv-5501, 2023 U.S. Dist. LEXIS 65544, at *10 (S.D. Ohio Apr. 13, 2023) ("*Kramer I*") (0.26% participation "easily meets the threshold for selectivity"); *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 46 (1st Cir. 2008) ("*Alexander II*") (8.7% was "select"); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F. 3d 283, 289 (2d Cir. 2000) (15.34% met "select group" criterion); *Sikora*, 876 F.3d at 113 (less than 0.5% met "select group" element); *Jones*, 2019 U.S. Dist. LEXIS 96814, at *13 (5.56% favored finding plan was " top-hat" plan); (Dkt. 127, at 7, n.3.).

From 2015 to 2024, the average salary of *all* Gallagher U.S. employees was approximately $99,000. (SF ¶ 152.)[10] But the median salary for U.S.-based employees accruing an award under the Plan was $400,000, and the average salary for U.S.-based employees accruing an award under the Plan from 2015-2024 was $451,994. (SF ¶¶ 153, 154); *Alexander II*, 513 F.3d at 46 (a plan covering employees averaging over $400,000 a year was a top-hat plan); *Fishman*, 539 F. Supp. 2d at 1046 (compensation 3-4 times more than the average is "highly compensated" "under any reasonable view of that term"); *Kramer I*, 2023 U.S. Dist. LEXIS 65544, at *10-11 (participants were "highly compensated" when salaries were 4 times non-participants); *Demery*, 216 F.3d at 289 (participants were highly compensated where average salary was more than double that of the average salary of all of the company's employees); *IT Grp., Inc. v. Bookspan (In re IT Grp., Inc.)*, 305 B.R. 402, 411 (Bankr. D. Del. 2004) (participants were "highly compensated" earning more than $100,000 per year) *aff'd sub nom. Accardi v. IT Corp. (In re IT Corp.)*, 323 B.R. 578 (D. Del. 2005), *aff'd*, 448 F.3d 661 (3d Cir. 2006). Further, Gallagher's U.S.-based Plan participants' salaries, by average and median, exceed the Internal Revenue Code's definition of "highly compensated employees" and "key employees" over this same time period. (SF ¶ 155); *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 13 (2004) (applying the IRC definition of "highly compensated employee" to interpret the phrase's meaning in the "top-hat" provision). Moreover, the uncontroverted evidence demonstrates that Plan participants are management-level executives with job titles including CEO, CFO, COO, Chief Accounting Officer, Chief Marketing Officer, President, Chairman, Vice President, and Executive Vice President. (SF ¶ 156); *Colburn v. Hickory Springs Mfg. Co.*, 448 F. Supp. 3d 512, 527 (E.D.N.C.

---

[10] This $99,000 figure includes Plan participants. Thus, if Plan participants were excluded, the average salary of all Gallagher U.S. employees would decrease.

2020) (finding that plan participants' job titles included chairman of the board, general counsel, and VP of finance was indicative of "top-hat" plan).

Chung also contends the Plan is not a "top-hat" plan because participants do not have "substantial influence" over the design or operation of the Plan and it was offered in a "take-it-or-leave-it" manner. (SAC ¶ 59.) But the Northern District of Illinois and other courts have wholly rejected this *exact* argument, because bargaining power and influence are "mentioned nowhere in [ERISA]." *Fishman*, 539 F. Supp. 2d at 1041 n.3; *see also* 29 U.S.C. § 1051(2); *Alexander II*, 513 F.3d at 47-48 (rejecting "appellant's invitation to depart from the plain language of [ERISA] and jerry-build onto it a requirement of individual bargaining power"); *Sikora*, 876 F.3d at 112 ("Plan participant bargaining power, though, is not a substantive element of a top hat plan."). Congress could have incorporated a "substantial influence" requirement into the statute, but it chose not to.

### 3. The primary purpose of the Plan is to defer compensation for a select group of highly compensated or management-level employees.

The gravamen of Chung's argument is that the Plan's "purpose" is to "retain employees" rather than to defer compensation and, therefore, the Plan is not a "top-hat" plan. (SAC ¶¶ 2, 126.) This argument is belied by the evidence.

### a. The Plan's primary purpose is to defer compensation.

When the Plan was established in 2001, Gallagher satisfied its obligation under 29 C.F.R. § 2520.104-23(b)(1) by filing a "top-hat" plan exemption letter with the U.S. Department of Labor declaring that the Plan is "unfunded and maintained ***primarily*** for the purpose of providing deferred compensation for a select group of management or highly compensated employees." (SF ¶ 157.)[11] In March 2001, Gallagher established the Plan's "rabbi trust" (SF ¶ 139) which is "the

---

[11] Companies can satisfy their reporting and disclosure requirements for "top-hat" plans by "[f]iling a statement with the Secretary of Labor that includes the name and address of the employer, the employer identification number (EIN) assigned by the Internal Revenue Service, a

most common mechanism" to pay deferred compensation. *In re Cheeks*, 467 B.R. at 153. The Plan's "rabbi trust" states that Gallagher adopted a "non-qualified plan known as the [DEPP]," and that the Plan is "as an unfunded plan maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees." (SF ¶¶ 139, 140.)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████  In this regard, Section 21 of the Plan ("Status of the Plan") expressly states that "the Plan *is intended to be* a plan that it is 'unfunded and is maintained by an employer *primarily* for the purpose of providing deferred compensation for a select group of management or highly compensated employees' within the meaning of Sections 201(2), 301(a)(3) and 401(a)(1) of ERISA" and "shall be administered and interpreted to the extent possible in a manner consistent with that intent." (SF ¶ 161.) The Committee (and its delegates, including the Chief Executive Officer) have complete discretionary authority to "interpret" and construe the Plan, and such interpretations are "final, binding, and conclusive." (SF ¶ 160.)

Since then, Gallagher's SEC filings consistently refer to the Plan as a "non-qualified deferred compensation" plan and awards under the Plan as "deferred compensation." (SF ¶¶ 158, 159.)  Further, Gallagher's SEC filings explain that "deferred realization" of this "non-qualified deferred compensation" "encourages retention." (*Id.*) ████████████████████████

---

declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and a statement of the number of such plans and the number of employees in each. . . ." 29 C.F.R. § 2520.104-23(b)(1).

███████████████████████████████████████████

████████████

      **b.**      **The fact that the Plan is a means to retain executives does not disqualify the Plan from "top-hat" plan status.**

Chung's argument rests upon nothing more than the Plan's preamble "purpose" language which states that "[t]he purpose of [the Plan] is to encourage key employees of [the Company] to remain employed with the Company until at least age 62." (*See* SAC ¶¶ 2, 123.) Defendants do not dispute that, as a functional and practical matter, the Plan is a means to retain a select group of high-ranking employees. But Chung's argument misses the mark.

The word "primarily" in 29 U.S.C. §§ 1101(a)(1), 1051(2), 1081(a)(3) means the "primary benefit" of the plan, not the "primary use" of the plan. U.S. Dep't of Lab. Opinion Letter 90-14A, at 2, n.1, 1990 ERISA LEXIS 12, at *3-4 n.1 (May 8, 1990) ("term 'primarily' . . . refers to the *purpose of the plan (i.e., the benefits provided*)…") (emphasis added); *Keefe v. LendUs, LLC*, No. 20-195, 2020 U.S. Dist. LEXIS 99924, at *5 (D.N.H. June 8, 2020) ("The use of the term 'primarily' in the statute means the primary benefit of the plan, not the primary use of the plan."). The "fact that a plan is 'established as a means to retain valuable employees' does not disqualify it from the top hat status it otherwise deserves." *Alexander I*, 467 F. Supp. 2d at 142 (quoting *Demery*, 216 F. 3d at 287).) Indeed, a plan established to retain valuable employees "***weigh[s] in favor***" of classifying it as "top-hat" plan. *Demery*, 216 F.3d at 287 (emphasis added) (holding that plan was a "top-hat" plan as "a matter of law"). Thus, even "a plan that states a primary purpose of retaining valuable employees may nevertheless be a top hat plan if the primary *benefit* is deferred compensation." *Keefe*, 2020 U.S. Dist. LEXIS 99924, at *5 (emphasis added).

Here, Chung does not dispute that deferred compensation is the ***only*** benefit provided under the Plan. (*See generally* SAC.) Nor can he. Under the Plan, Gallagher contributes either Gallagher

stock or cash to participants' unfunded bookkeeping accounts, the receipt of which is subject to the terms and conditions of the Plan. (SF ¶¶ 137, 141.)



Chung offers no argument, evidence, or expert to rebut this.

Further, there is nothing unusual about the Plan's "purpose" statement. *Hoak v. Plan Adm'r of the Plans of NCR Corp.*, 717 F. Supp. 3d 1280, 1283-84 (N.D. Ga. 2024) (finding that "purpose" language that plans were "to attract and retain executives of superior ability, industry, and loyalty" was "*consistent with*" definition of a "top-hat" plan); *see id.* at 1284 n. 3 (noting that "other Plans have a similar stated purpose"). Other publicly-traded companies include similar "purpose" language regarding retention of employees in their "top-hat" plans. (SF ¶¶ 173, 174.)[12] According to a survey conducted by NEPC (one of the largest independent non-qualified deferred compensation plan providers in the country) and PLANSPONSOR (a prominent retirement plan industry resource), seventy-six percent (76%) of employers ranked "attracting and retaining executives" and other key personnel as one of the top three goals for their non-qualified deferred compensation programs. (SF ¶ 175.) And the 2024 NFP US Executive Compensation and Benefits

---

[12]     *KBC Asset Mgmt. NV v. Discover Fin. Servs.*, No. 23-cv-06788, 2025 U.S. Dist. LEXIS 61675, at *38 (N.D. Ill. Mar. 31, 2025) (Pacold, J.) (courts can take "judicial notice of matters of public record"); *Bartnett v. Abbott Labs.*, 492 F. Supp. 3d 787, 798 n.2 (N.D. Ill. 2020) (courts may take judicial notice of information on DOL website); *Hernandez v. Midland Credit Mgmt.*, No. 04 C 7844, 2006 U.S. Dist. LEXIS 10527, at *12 (N.D. Ill. Mar. 14, 2006) (taking judicial notice of SEC filings).

Trend Report also noted that seventy-three (73%) of respondents offer a non-qualified deferred compensation plan as a tool to retain executives. (SF ¶ 176.)

███████████████████████████████████████

███████████████████████████████████ (SF ¶ 171.) ██████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████ (SF ¶ 172.)

The primary purpose of "top-hat" plans (like the Plan at issue here) is to defer compensation (i.e. the benefit provided), and the reason for doing so is to retain employees (i.e., the use). The two concepts are consistent with one another, but deferred compensation is always the primary purpose because, without it, a plan cannot retain employees. *See Keefe*, 2020 U.S. Dist. LEXIS 99924, at *5 ("[A] plan that states a primary purpose of retaining valuable employees may nevertheless be a top hat plan if the primary *benefit* is deferred compensation." (emphasis added)); *Hoak*, 717 F. Supp. 3d at 1283-84 n. 3. But even if the Court finds that the Plan has multiple purposes, it is still a "top-hat" plan. *See Garratt*, 245 F.3d at 946 n.4 (7th Cir. 2001) ("top hat" plans can have multiple broad purposes). Adopting Chung's theory would potentially invalidate other "top-hat" plans merely because they include a "purpose" statement that mentions employee retention. This misses the forest for the trees—the *primary* purpose of the Plan, and every other top-hat plan, is to defer compensation, even if the reason for deferring compensation is employee retention.

#### 4.     <u>The existence of other deferred compensation plans has no bearing on the Plan's legal status as a top-hat plan.</u>

Chung also contends that, because Gallagher maintains another deferred compensation plan—the Supplemental Savings & Thrift Plan ("SSTP")—the DEPP cannot be a "top-hat" plan. (SAC ¶¶ 125-126.) There is no support for this argument. In fact, it is directly at odds with the Department of Labor's alternative filing requirements for "top-hat" plans, which permits companies to satisfy their reporting and disclosure requirement by"[f]iling a statement with the Secretary of Labor that includes the name and address of the employer, the employer identification number (EIN) assigned by the Internal Revenue Service, a declaration that the employer maintains a plan *or plans* primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and *a statement of the number of such plans* and the number of employees in each[.]" 29 C.F.R. § 2520.104-23(b)(1). The DOL's alternative filing requirement would not permit employers to satisfy this filing requirement for *multiple "top-hat" plans* if having multiple plans was impermissible or invalidated one such plan as a "top-hat" plan.

Finally, Chung clearly has not thought through the consequences of pursuing his theory that the Plan is not a "top-hat" plan.  If it is not a "top-hat" plan, then it must be a "qualified" plan subject to Internal Revenue Code § 415 limits.[13]

---

[13]    Note, however, that Chung *admits and alleges* that the Plan is a "*non-qualified*" plan under the terms of 26 U.S.C. § 401. (SF ¶ 136; SAC ¶ 46.)

█████████████████████████████████████████████████████████ If

Chung wins on his theory that the Plan is not a top-hat plan (despite the fact that Gallagher has

complied with all Department of Labor requirements to maintain it as a top-hat plan for the last

20+ years), every other Plan participant could lose.

Because Chung cannot sustain his burden of proving that the Plan is not a "top-hat" plan,

and the evidence confirms the Plan is a "top-hat" plan, Defendants are entitled to summary

judgment as a matter of law on Counts I and II.

**B.      The "Plan Fiduciary Defendants" are entitled to summary judgment on Count III.**

As a derivative claim to Counts I and II, Chung contends the "Plan Fiduciary Defendants"

breached their purported fiduciary duties by operating the Plan as a "top-hat" plan. (Count III,

SAC ¶¶ 140-144.) [15] But, as explained above, the Plan is a "top-hat" plan. (*See supra* § V.A.) And

as Chung admits, "top-hat" plans are exempt from "ERISA's substantive requirements, including

. . . fiduciary rules." (*See* SAC ¶¶ 2, 57.) Therefore, the Plan is exempt from ERISA's fiduciary

provisions, has no fiduciaries, and Chung's claim for breach of fiduciary duty fundamentally fails.

*See Hendon*, 541 U.S. at 13 ("top-hat" plans are exempt from ERISA's fiduciary provisions);

---

[14] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

[15]     Count III is asserted against the "Plan Fiduciary Defendants." (SAC ¶ 137.) The only named and served defendants included within the definition of "Plan Fiduciary Defendants" are Gallagher and the Compensation Committee. (*See* SAC ¶¶ 11, 12.) Discovery is over, Chung has filed two amended complaints, and he has failed to name or serve any other "Plan Fiduciary Defendant." Chung cannot assert Count III, or any other Count in the SAC, against any unnamed, unserved person(s) or entity(ies). *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); *Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process.")

*Garratt*, 245 F.3d at 949 ("since a top-hat plan is exempt from ERISA's fiduciary rules, [plaintiffs] have no basis to bring such a claim"); *Van Bergen v. Fastmore Logistics, LLC*, No. 21 C 5796, 2022 U.S. Dist. LEXIS 98570, at *8 (N.D. Ill. June 2, 2022) (dismissing breach of fiduciary duty claim after assuming the plan was a "top-hat" plan); *Jones*, 2019 U.S. Dist. LEXIS 96814, at *18 (dismissing breach of fiduciary duty claim after finding the plan was a "top-hat" plan).

Even if this Court were to determine that a triable dispute remains as to whether the Plan is a "top-hat" plan, the "Plan Fiduciary Defendants" are still entitled to judgment on Count III. The threshold issue in every breach of fiduciary duty claim is "whether that person was acting as a fiduciary" with respect to the conduct alleged. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Chung contends the "Plan Fiduciary Defendants" breached their "fiduciary duties" by designing and operating the Plan as a "top-hat" plan when Chung (and only Chung) contends it is not. (SAC ¶¶ 140-144.) But what Chung complains about are *settlor* functions (the form, design, and structure of the plan, who is entitled to receive Plan benefits and in what amounts, and the funding of the Plan). *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999). These are not fiduciary functions and, therefore, do not give rise to a breach of fiduciary duty claim.

Similar breach of fiduciary duty claims have been rejected. *Paul v. RBC Cap. Mkts. LLC*, No. C16-5616 RBL, 2018 U.S. Dist. LEXIS 128232 (W.D. Wash. July 31, 2018). In *Paul*, the plaintiffs alleged that RBC breached its fiduciary duties by administering a plan as a "top-hat" plan even though (as plaintiffs argued) it was not a "top-hat" plan. The court held that "construing 'fiduciary duties' liberally . . . in the absence of some articulable conduct that violates a fiduciary duty, correctly enforcing a flawed plan does not support a breach of fiduciary duty claim as a matter of law." *Id.* at *19. Courts across the country agree, holding that it is not a breach of fiduciary duty to correctly administer a plan that allegedly violates ERISA, and correctly enforcing

an allegedly flawed plan is not a breach of fiduciary duty. *See Sec'y of Lab. v. Macy's, Inc.*, No. 17-541, 2022 U.S. Dist. LEXIS 23849, at *11-18 (S.D. Ohio Feb. 10, 2022); *Scott v. AT&T Inc.*, No. 20-cv-07094-JD, 2025 U.S. Dist. LEXIS 130661, at *25 (N.D. Cal. July 9, 2025); *Hamrick v. E.I. DU Pont de Nemours & Co.*, No. 23-238-JLH, 2024 U.S. Dist. LEXIS 17497, at *14 (D. Del. Jan. 31, 2024) *R&R adopted*, 2024 U.S. Dist. LEXIS 97910 (D. Del. June 3, 2024); *Laurent v. PricewaterhouseCoopers LLP*, No. 06-2280 (JPO), 2018 U.S. Dist. LEXIS 8995, at *8-9 (S.D.N.Y. Jan. 19, 2018); *Cement & Concrete Workers Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 185 (E.D.N.Y. 2005) *aff'd* 199 F. App'x 29 (2d Cir. 2006). This Court should follow suit.

Moreover, Chung's breach of fiduciary duty claim is barred by ERISA's six-year limitations period for such claims. (*See* Dkts. 186-190, Affirmative Defense #14); 29 U.S.C. § 1113(1), (2) (breach of fiduciary duty claims must be filed no later than six years from the last act which constituted a breach); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 940 (7th Cir. 2024) (ERISA's six-year prescriptive period "is a statute of repose."). Chung was a "high-ranking executive" of an employee benefits consulting company, who received annual unvested awards under the Plan since 2009. (SAC ¶¶ 71.) In connection with those awards, he acknowledged receipt of a copy of the Plan and agreed to all of its conditions. (*See* SF ¶¶ 6, 203, 204.) Accordingly, any breach of fiduciary duty claim related to the status of the Plan as a top-hat plan should have been filed by 2015. 29 U.S.C. § 1113(1). Chung did not assert this claim until July 2021 (Dkt. 17, Count III), so the Plan Fiduciary Defendants are entitled to summary judgment on Count III.

**C.**     **Chung has not, and cannot, prove that Gallagher violated ERISA § 510.**

ERISA § 510 prohibits employers from terminating a plan participant "for the purpose of interfering with the attainment" of a benefit. *See* 29 U.S.C. § 1140. However, because the loss of

-29-

benefits is an inevitable consequence of nearly every employee termination, simply showing that a loss of benefits was "a consequence of" termination is not enough. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). Rather, Chung must show that Gallagher had the "specific intent" to deprive him of his Plan benefits to prevail under ERISA § 510. *Id.*; *see also Lindemann* v. Mobile Oil Corp., 141 F.3d 290, 295 (7th Cir. 1998); *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 n.3 (7th Cir. 1995); *Hamann v. Int'l Harvester Co.*, No. 84 C 10552, 1985 U.S. Dist. LEXIS 14343, at *8 (N.D. Ill. Oct. 30, 1985) (plaintiff's "burden is not satisfied by a mere showing that a defendant knew that a loss of pension benefits would occur: a plaintiff must show that defendant specifically intended to violate ERISA, not that the loss of pension benefits were a mere consequence of a termination." (citation omitted)). Chung has not, and cannot, meet his burden.

### 1. Chung cannot establish a prima facie case of interference.

Chung has not, and cannot, point to any direct evidence that Gallagher "specifically intended" to deprive him of his Plan benefits when it terminated his employment.

-30-

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ That Chung forfeited his

unvested Plan benefits "as a consequence of" his failure to adequately perform his job (and his

resulting termination), does not establish a *prima facie* case. *Isbell*, 418 F.3d. at 796.

Lacking any direct evidence, Chung is left to meet his burden with the burden-shifting

analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Isbell*, 418 F.3d at 796.

Under this burden-shifting approach, Chung must first make out a *prima facie* case by showing

that he was discharged "under circumstances that provide some basis for believing that the

prohibited intent to retaliate or to prevent the use of benefits was present." *Isbell*, 418 F.3d at 796.

(internal quotation marks omitted). He cannot.

First, Chung alleges that he was "near retirement age" when Mr. Ziebell terminated him in

January 2020. (SAC ¶ 90.) ████████████████████████████████████

████████████████████████████████████ Six (6) years is too remote

in time to reasonably infer any "causal connection" between Chung's termination and an attempt

to interfere with the vesting of his Plan benefits, which would not have occurred until 2026. *See,*

*e.g.*, *Lynch v. Alpharma, Inc.*, No. 05 C 3065, 2006 U.S. Dist. LEXIS 23678, at *28 (N.D. Ill. Apr.

27, 2006) (granting employer summary judgment and rejecting argument that termination was

motivated to prevent retirement benefits from vesting where plaintiff was terminated months

before vesting date); *Steele v. City of Bluffton*, 31 F. Supp. 2d 1084, 1097-98 (N.D. Ind. 1998)

(granting employer summary judgment and rejecting argument that termination was motivated to

prevent retirement benefits from vesting where plaintiff was terminated nine (9) months before

-31-

vesting date). To hold otherwise would mean that employers must retain underperforming employees with unvested benefits for *years* simply to avoid a potential ERISA § 510 claim.

Second, Chung makes an extremely vague and conclusory allegation that Gallagher had a practice of "targeting executives near retirement age to prevent their Plan awards from vesting, which, [] was part of the company's overall cost-reduction strategy." (SAC ¶ 73.) Again, there is no evidence of a "targeted strategy" to terminate executives near retirement age as part of a "cost reduction strategy," and, not surprisingly, Chung himself was unable to articulate any specifics.

████████████████████████████████

██████████████ (SF ¶ 129.) Chung's speculation is insufficient to support a *prima facie* case. *See, e.g.*, *Coldwate v. Alcatel-Lucent USA, Inc.*, No. 10-CV-4918, 2012 U.S. Dist. LEXIS 149927, at *28-29 (N.D. Ill. Oct. 18, 2012) (rejecting "vague and undeveloped argument" that termination was part of some larger plan of an employer to accomplish certain unspecific "reduction goals"); *Little*, 71.F.3d at 643 (inference may not be created by mere "subjective belief or debatable assertions"); *Hamann*, 1985 U.S. Dist. LEXIS 14343, at *8-9 ("opinions" or "feelings" are insufficient to defeat a motion for summary judgment.); *Johnson v. Roehl Props. of Ind. LLC*, No. 2:10-cv-81, 2012 U.S. Dist. LEXIS 47697, at *28 (N.D. Ind. Apr. 4, 2012) ("Other than completely unfounded speculation," plaintiff has presented "no real evidence whatsoever that would allow for the conclusion that a contributing factor to his termination was a desire to frustrate his attainment or enjoyment of these benefit rights."). And even if Gallagher stood to save money by terminating Chung, that is insufficient to satisfy his *prima facie* burden. *Little*, 71.F.3d at 643-44 (finding no *prima facie* case because plaintiff offered no significant evidence that cost savings was a *motivating factor* in employee's termination); *Coldwate v. Alcatel-Lucent USA, Inc.*, No. 10-CV-4918, 2012 U.S. Dist. LEXIS 149927, at *28-29 (N.D. Ill. Oct. 18, 2012) ("If pointing out

that an employer stood to save money by eliminating an employee was all it took to show intent, the third prong of the indirect test would be rendered a nullity. Plaintiff has to point to more probative facts.")

Because Chung has not established a *prima facie* case, the inquiry ends there, and his ERISA § 510 claim fails. *Alcatel*, 2012 U.S. Dist. LEXIS 149927, at \*5 (granting summary judgment for defendant-employer because plaintiff failed to make out a *prima facie* case).

### 2. Gallagher terminated Chung due to performance concerns.

Even if Chung was able to make out a *prima facie* case of interference (he cannot), Gallagher must only articulate—but not prove—a legitimate, non-discriminatory reason for why it terminated Chung. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256-257 (1981); *Lindemann*, 141 F.3d at 296. As explained above, Mr. Ziebell believed Chung's performance was deficient, which is well-documented in Chung's formal and informal evaluations, e-mails, and witness testimony. (*See supra* § II.) To briefly summarize, from 2017-2019, Mr. Ziebell observed and documented his concerns and impressions with Chung's performance and management of the Western Region including: (1) not visiting the branch offices in the Western Region with sufficient frequency; (2) making remarks unbecoming of a Regional President; (3) exhibiting unprofessional and embarrassing behavior in front of clients, merger partners, and others; (4) having a poor reputation with his direct reports, within GBS generally, and with executives of other divisions of Gallagher; (5) failing to act in GBS's best interest during the merger process; (6) failing to take ownership or leadership during the merger integration process; (7) not being engaged during meetings, including working on other matters during such meetings rather than actively participating; (8) failing to attend meetings at which his attendance was required; (9) generally exercising poor judgment; (10) not being physically present in his office and unable to locate when needed; (11) not being timely in his communications and responses; (12) failing to execute on

initiatives decided during Executive Committee meetings; (13) failing to execute on company-wide initiatives; (14) repeatedly raising and not acting upon issues that were discussed and decided upon in Executive Committee meetings at which Chung attended; (15) failing to correct prior behaviors and performance despite direct conversations with Mr. Ziebell, internal and external coaching, and receiving informal and formal feedback; (16) failing to proactively and timely communicate with Mr. Ziebell regarding actions involving the Western Region; and (17) substandard financial performance of the Western Region. (SF ¶¶ 134, 212-225.)

As succinctly explained in Chung's termination memorandum, Mr. Ziebell terminated Chung due to Chung's ██████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████ (SF ¶ 101.) Courts routinely hold that terminating an employee for performance issues is a legitimate, conventional business reason and not purposeful interference under ERISA. *See, e.g.*, *Isbell*, 418 F.3d at 796 (affirming summary judgment where employer terminated employees to hire more productive employees); *Degrave v. Nat'l Automatic Merch. Ass'n*, No. 04 C 8147, 2007 U.S. Dist. LEXIS 4655, at *20-29 (N.D. Ill. Jan. 19, 2007) (entering judgment for defendant on ERISA § 510 claim where the defendant had credibly shown that the plaintiff was terminated due to poor job performance); *Cameron v. Idearc Media Corp.*, 685 F.3d 44, 48-49 (1st Cir. 2012) ("Whatever one thinks of eliminating weaker performing sales personnel in middle age or near to their pensions, poor performance in a job is a conventional business motive and not . . . purposeful interference under ERISA."); *Barnhardt v. Open Harvest Coop.*, 742 F.3d 365, 372 (8th Cir. 2014) (termination due to tardiness, unreasonably long lunch breaks, inappropriate comments was legitimate). Gallagher has more than sufficiently met its burden of production. *See,*

*e.g.*, *Lindemann*, 141 F.3d at 296 (noting that employer's burden at this stage is of *production*, not *persuasion*, and granting summary judgment for employer and finding such burden satisfied through plaintiff's termination letter that stated plaintiff was terminated for excessive absences).

### 3.      Chung has not, and cannot, meet his burden of proving pretext.

Accordingly, the burden shifts back to Chung who carries the burden of persuasion and must *prove* that the Company's stated reason is pretextual. *Meredith v. Navistar*, 935 F.2d 124, 127 (7th Cir. 1991). That is, Chung must *show* that the stated reason was a "lie" covering for Gallagher's alleged true motive: terminating him with the "specific intent" to deprive him of his Plan benefits. *Id.*; *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) ("A pretext is a deliberate falsehood; a lie, and not an oddity or error."). In performing this pretext analysis, the question is not whether Chung's performance *was poor*, but whether "[Mr. Ziebell] believed [Chung] was not performing well at the time of termination." *Galvan v. State*, 117 F.4th 935, 940 (7th Cir. 2024) ("Galvan would need to demonstrate that the employer did not genuinely believe its [] evaluations that perceived the performance as inadequate."); *Sample v. Aldi, Inc.*, 61 F.3d 544, 549 (7th Cir. 1995) ("In other words, Sample must create an issue as to 'whether the employer honestly believes in the reasons it offers,' not whether Aldi made a bad decision.").

To suggest "pretext," Chung contends that he previously had "decades" of "outstanding performance" and "never had a negative performance review" at the Company before Mr. Ziebell became the CEO in 2017. (SAC ¶¶ 82, 85.) ██████████████████████████████ ██████████████████████████████████ (SF ¶¶ 11, 12.) Setting that aside, Chung's supposedly good performance prior to 2017 is "largely irrelevant." *Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948, 959 (7th Cir. 2021) ("As evidence of discrimination, Igasaki contrasts his past positive performance reviews from 2011 and earlier with his negative performance reviews when Forester took over. Yet Igasaki's past performance is largely

irrelevant."); *Galvan*, 117 F.4th at 940 ("[I]t is not enough to merely show that in the past, his former supervisor evaluated his performance positively. Galvan would need to demonstrate that the employer did not genuinely believe its later evaluations that perceived the performance as inadequate."). It is not Chung's *past* performance for a former boss (Mr. Durkin) that matters, it is his *recent* performance in the eyes of his current boss (Mr. Ziebell) that matters. *See, e.g., id.*; *Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 328-29 (7th Cir. 2002) (concluding that employee whose job performance was repeatedly criticized was not meeting employer's legitimate job expectations, despite evidence that, at one point, employee had received positive performance reviews); *Hong v. Children's Mem'l Hosp.,* 993 F.2d 1257, 1262 (7th Cir. 1993) (noting that central issue is whether employee was performing well in her job at time of her firing); *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337-38 (7th Cir. 1991) (The "perception of the decision-maker" controls the pretext analysis.).

Chung has not come forward with any evidence to dispute that Mr. Ziebell's *perception* of Chung's performance from 2017 to 2020 was poor. Quite the opposite. ██████████████ ██████████████████████████████████████████████ (SF ¶ 78); ██████████ ██████████████████████████████████████████████ (SF ¶ 108); ██████ ██████████████████████████████████████ (SF ¶ 110).

Chung also contends that Gallagher typically places poorly performing employees on a Performance Improvement Plan ("PIP"), and he was not. (SAC ¶ 84.) ██████████ ██████████████████████████████████ (SF ¶ 125). ██████████████ ██████████████████. (SF ¶ 126.) ██████████████████████████ ██████████ (SF ¶ 128.) In any event, Chung's 2017 and 2018 performance evaluations, in addition to Mr. Ziebell's repeated informal feedback, sufficiently outlined Chung's performance

deficiencies exactly as a PIP would have. *Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 24-1942, 2025 U.S. App. LEXIS 19662, at *62-63 (7th Cir. Aug. 5, 2025) ("[I]t is not a court's role to sit as a super-personnel department and to decide whether an employer's decision to discharge an employee was right or wrong; our one and only task is to decide whether the plaintiff was discharged for an unlawful reason."). That Chung did not appreciate or understand the severity of his performance problems only highlights his lack of self-awareness and poor judgment that led to his termination in the first place.

Finally, Chung claims his termination was "sudden" and without "prior warning." (SAC ¶¶ 1, 83.) This is demonstrably false.



. (SF ¶¶ 104, 105.)

(SF ¶ 108.)

Chung has not, and cannot, establish that Mr. Ziebell did not genuinely believe that Chung's performance was inadequate and that the stated reasons were "false" or a "lie" and, therefore, pretextual. Judgment should be entered for Gallagher on Chung's ERISA § 510 claim (Count IV). *See Galvan*, 117 F.4th at 940; *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996) (summary judgment entered for employer because employee failed to demonstrate pretext).

**D.      Chung has not, and cannot, prove he is entitled to severance benefits under the Severance Plan.**

**1.      Chung fails to allege he is eligible for severance benefits under the Severance Plan.**

The Severance Plan is an ERISA-governed "welfare benefit plan." (SF ¶ 180); 29 U.S.C. § 1002(1). Welfare plans need not provide for vesting, and plan sponsors can draft them as they

desire, including in their own interest. *Carlson v. Northrop Grumman Severance Plan*, 67 F.4th 871, 874-75 (7th Cir. 2023). Section 1 of the Severance Plan is clear—a regular full-time employee ("eligible employee") is only potentially eligible for severance benefits "***in the event that*** *his/her employment is involuntarily terminated* [] *for lack of work, rearrangement of work, or reduction in workforce*, as determined in the sole discretion of the Company's Vice President & Chief Human Resources Officer." (SF ¶¶ 180, 181.) Thus, an involuntary termination due to "lack of work, rearrangement of work, or reduction in workforce," is a "condition precedent" to eligibility. *IBM v. United Microelectronics Corp.*, 764 F. App'x 9, 13 (2d Cir. 2019) (recognized "linguistic conventions" of a condition precedent include the use of "***in the event that***").[16]

While Chung alleges he was an "eligible employee" as defined in Section 2 of the Severance Plan, he fails to allege he was terminated for any of the three conditions precedent in Section 1. (*See generally* SAC ¶¶ 168-173); (Dkt. 195, Second Affirmative Defense). This missing allegation is fatal to his claim, and judgment should be entered for the Severance Plan under *either* Rule 12(c)[17] or Rule 56. *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005) (plaintiffs bear burden of proving eligibility for benefits).

---

[16]    Section 3 of the DEPP Plan document confirms these are conditions precedent to eligibility. (SF ¶ 186) (providing that an employee may only vest in his unvested equity awards if he is terminated "*in a manner*" that entitles him to severance benefits under the Severance Plan).

[17]    *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025) ("When a defendant files a Rule 12(c) motion to challenge the sufficiency of the complaint, . . . the complaint must meet the Rule 12(b)(6) standard for the suit to survive."); *Ritchie Capital Mgmt., L.L.C. v. Kermath*, No. 15 C 8021, 2016 U.S. Dist. LEXIS 174338, at **8, 13 (N.D. Ill. Dec. 13, 2016) (*prima facie* elements of an ERISA claim for benefits require party to allege he was eligible for benefits under terms of plan; dismissing claim for benefits because party failed to adequately alleged eligibility); *Zekucia v. Ounce of Prevention Fund*, No. 19 C 8081, 2020 U.S. Dist. LEXIS 260211, at *7 (N.D. Ill. Nov. 6, 2020) (same); *Melendez v. N.Y. Foundling, Inc.*, No. 17-CV-6162 (KMK), 2019 U.S. Dist. LEXIS 36883, at *17 (S.D.N.Y. Mar. 6, 2019) (dismissing claim for severance benefits where plaintiff failed to allege he was terminated for a qualifying event (i.e., reorganization, elimination of a position, or department cutback)).

The Court should reject any attempt by Chung to belatedly amend his complaint for a third time to assert that he was terminated for one of these three reasons, because he "do[es] not have free rein to change the factual basis of [his] claim at summary judgment." *Ollison v. Gossett*, 136 F.4th 729, 744 (7th Cir. 2025) (Kirsch, J., concurring.); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018) (plaintiff cannot alter the factual basis of its complaint at summary judgment); *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 813 (7th Cir. 2011) (affirming district court's refusal to consider new factual basis for termination reason not alleged in complaint); *Shanahan v. City of Chicago*, 82 F.3d 776, 777 (7th Cir. 1996) (rejecting attempt to alter he factual basis surrounding reason for termination in response to summary judgment).

### 2. No "decision" was made to deny Chung severance benefits at the time of his termination.

In the SAC, Chung alleges that Mr. McClellan and Ms. Pietrucha "decided" to deny him severance benefits "between October 2019 and January 2020," and that "decision" was "arbitrary and capricious." (SAC ¶ 171.) But there is no evidence any such "decision" was made at or before the time of Chung's termination.



(SF ¶¶ 197, 198.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (SF ¶¶ 197-201.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ (SF ¶¶ 82-84.) Because there is no evidence that Mr. McClellan or Ms. Pietrucha denied Chung severance "between October 2019 and January 2020," and this is the only

purported "decision" Chung challenges in the SAC, the Severance Plan is entitled to summary judgment on Count V.

Indeed, the only "decision" to deny Chung severance benefits occurred in 2024 when the Severance Plan Administrator denied Chung's formal administrative claim and subsequent appeal. However, Chung does not challenge *that* decision at all. (*See generally* SAC.)[18] Indeed, the SAC is devoid of a single fact regarding his exhaustion of the Severance Plan's administrative process or the formal decision to deny his administrative claim and appeal in 2024. Instead, he apparently attempts to challenge a fictitious "decision" that was never made between October 2019 to January 2020. (*See generally* SAC.)

Though he does not directly challenge the Plan Administrator's 2024 administrative decision in the SAC, it is worth addressing herein. When, as here, a plan grants a benefit plan administrator broad discretionary authority,[19] that decision is entitled to deference under the "arbitrary and capricious" standard. *Est. of Gifford v. Operating Eng'rs 139 Health Ben. Fund,* 126 F.4th 509, 517 (7th Cir. 2025). Under this "deferential standard," the Court reviews the administrator's decision "only to determine if it was 'downright unreasonable.'" *Id.* The Court does not "decide whether it would reach the same decision" but rather determines "[i]f the administrator's decision 'was made rationally and in good faith.'" *Id.* In other words, the Court should "not second-guess whether the decision is right.'" *Id.; Chojnacki v. Georgia-Pacific Corp.,*

---

[18]     On June 4 2024, Chung sought leave to file a Second Amended Complaint. (Dkts. 76, 77.) ██████████████████████████████████████████████████████████████ (SF ¶ 187.) ██████████████████████████████████████████████████████████████ (*Id.*) ██████████████████████████████████████████████████████████████ (SF ¶ 188.) ██████████████████████████████████████████████████████████████ (SF ¶ 191.)

[19]     The Severance Plan Administrator has "the discretionary authority to make final determinations of eligibility for Plan benefits and to construe the terms of the Plan, including the making of factual determinations." (SF ¶ 202.)

108 F.3d 810, 816 (7th Cir. 1997) (plaintiffs must show that the Plan Administrator "not only made

the wrong call, but that [it] made a 'downright unreasonable' one").





(SF ¶ 187.)

(SF ¶¶ 130-133.) For these reasons, the Plan Administrator's decision was correct, based

on a reasonable interpretation of the Severance Plan document and the facts, and certainly not

"downright unreasonable." *Barden v. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund*,

12 F. App'x 412, 414 (7th Cir. 2001) ("A denial of benefits will not be set aside if it is based on a

reasonable interpretation of the plan documents."); *Carlson v. Northrop Grumman Severance*

*Plan*, No. 22-1764, 2022 U.S. Dist. LEXIS 59142, at \*17 (N.D. Ill. Mar. 31, 2022) (granting

summary judgment because plaintiff did not satisfy condition precedent for severance benefits)

*aff'd*, 67 F.4th 871 (7th Cir. 2023).



(SF ¶ 189.)

(SF ¶ 191.)



(SF ¶ 192.)

(SF ¶ 189.)[20]

(SF ¶ 193.)

(SF ¶¶ 193, 202.)

*See also Carlson*, 67 F.4th at 875 (that defendant had awarded severance benefits to some employees who did not meet the eligibility requirements did "not create a legal entitlement to" benefits).

(SF ¶ 190.)

(SF ¶ 194.)

(SF ¶ 90.)

---

[20]    Chung was also wrong, as Gallagher has consistently applied the Severance Plan.

███████████████████████████████████████████████████████

████████████████████████████████ (SF ¶ 195.)

As evidenced by Mr. Ziebell's termination memorandum, and Chung's well-documented performance issues, the Plan Administrator reasonably determined that Chung was not eligible for any severance benefits, and the Severance Plan is entitled to summary judgment on Count V. *See Williams v. Aetna Ins. Co.*, 509 F.3d 317, 321-22 (7th Cir. 2007) (court must uphold plan administrator's decision if it "is possible to offer a reasoned explanation, based on the evidence," or "is based on a reasonable explanation of relevant plan documents").

### E. Chung cannot prove Mr. McClellan and Ms. Pietrucha breached any fiduciary duty.

In Count III, Chung alleges that Mr. McClellan and Ms. Pietrucha breached their fiduciary duties in two ways. First, he claims that Mr. McClellan and Ms. Pietrucha allegedly "concealed": (1) that Chung was eligible for severance; (2) that if Chung received severance, his Plan benefits would vest; and (3) that Mr. McClellan and Ms. Pietrucha denied Chung severance benefits. (SAC ¶¶ 146, 147.) Second, he claims that they allegedly breached their fiduciary duties by denying him severance benefits. (*Id.* ¶ 149.) To prevail on this claim, Chung must present *evidence* that: (1) Mr. McClellan and Ms. Pietrucha are fiduciaries to the Severance Plan; (2) that they breached their fiduciary duties; and (3) that their breach harmed Chung. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007). The evidence contradicts these arguments, and Mr. McClellan and Ms. Pietrucha are entitled to summary judgment on Count III.

#### 1. There is no evidence that Mr. McClellan or Ms. Pietrucha acted in a fiduciary capacity prior to Chung's termination.

The threshold issue in every breach of fiduciary duty claim is whether the defendant was acting in a fiduciary capacity when taking the action subject of the complaint. *See Pegram*, 530 U.S. at 225. Mr. McClellan is not the "named" fiduciary of the Severance Plan, Ms. Pietrucha is.

-43-

(SF ¶¶ 47, 202.) And even though Ms. Pietrucha is the Severance Plan Administrator, there is **no evidence** she ever acted in a fiduciary capacity with respect to Chung and the Severance Plan leading up to, or at the time of, his termination in January 2020.

Further, there is no evidence that Mr. McClellan acted as a "functional fiduciary." *Pegram*, 530 U.S. at 225-26 (person is fiduciary only "*to the extent*" he exercises control over plan or its assets). ██████████████████████████████████████████████████ ██████████████████████████████████████████ (SF ¶¶ 197, 198.) ████████████████████████████████████████████████ ████████████████████████████████████████ (SF ¶¶ 197-201.)   The evidence confirms that, at all times, Mr. McClellan was merely performing his job as GBS's Vice President of Human Resources, not a fiduciary. *Brooks v. Pactiv Corp.*, 729 F.3d 758, 766 (7th Cir. 2013) ("An employer does not act as an ERISA fiduciary when it decides to terminate an employment relationship."); *Bland*, 401 F.3d at 787-88 (employee does not act as fiduciary when acting as "manager of its business"); *Sutton v. Bellsouth Telecomms., Inc.*, 189 F.3d 1318, 1321 (11th Cir. 1999) (corporate managerial decisions are not discretionary acts regarding plan administration). Because there is *no evidence* that Mr. McClellan or Ms. Pietrucha acted in a fiduciary capacity with respect to the Severance Plan, they are entitled to summary judgment on Count III.

### 2. Chung was never eligible for severance, so Mr. McClellan and Ms. Pietrucha could not "conceal" his eligibility from him.

Chung contends that Mr. McClellan and Ms. Pietrucha "concealed" from him that he was eligible for severance benefits. (SAC ¶ 146.) As explained above, Chung was not terminated for a "lack of work, rearrangement of work, or reduction in force," so no decision regarding severance benefits was necessary or appropriate at the time of his termination. Accordingly, Mr. McClellan

and Ms. Pietrucha could not possibly have "concealed" this information from Chung. Further, while Chung alleges that "[a]t the time of his termination . . . [he] was unaware of . . . the fact that Gallagher had a formal severance plan at all," ██████████████████████ ██████████████ (*Compare* SAC ¶ 110 *with* SF ¶ 196.)

### 3.   McClellan and Pietrucha are not fiduciaries to the DEPP.

Next, Chung contends that Mr. McClellan and Ms. Pietrucha breached their "fiduciary duties" by failing to inform him that his DEPP awards would vest if he was terminated in a manner that qualified him for severance benefits under the Severance Plan. (SAC ¶ 147.) Specifically, the DEPP (*not the Severance Plan*) provides that a participant's unvested Plan benefits vest if the participant is terminated "in a manner" that entitles the participant to receive a severance benefit pursuant to the Severance Plan. (SF ¶ 186.) Chung's allegation of "concealment" is frivolous—

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████ (SF ¶¶ 203-205); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (person who signs a document is presumed to know its contents).

Further, this fiduciary breach allegation is nonsense. Chung apparently faults Mr. McClellan and Ms. Pietrucha for failing to inform him *about the terms of the DEPP*. But Chung does not allege, and there is no evidence, that either of them are fiduciaries to the DEPP. (*See* SAC ¶¶ 146-155); *see* 29 U.S.C. § 1104(a)(1) (requiring fiduciaries to "discharge [its] duties with respect to a plan"); *Pegram*, 530 U.S. at 225-26 (person is fiduciary only "to the extent" he acts in such a capacity "in relation to a plan"). Indeed, as explained above, the DEPP is a top-hat plan and has no fiduciaries. (*See supra* § V.A.)  Further, even if the DEPP had fiduciaries (it does not), there

-45-

is no allegation—let alone any *evidence*—that Mr. McClellan or Ms. Pietrucha exercised any discretion over the DEPP. Finally, Chung fails to allege, let alone prove, that the supposed failure to inform him of this information harmed him. *See Kannapien*, 507 F.3d at 639 (plaintiff must allege the breach caused plaintiff harm); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (injury in fact must be concrete and particularized). In sum, Mr. McClellan and Ms. Pietrucha are entitled to summary judgment because they are not fiduciaries to the DEPP, had no fiduciary duty to inform him of this information, and there is no evidence Chung was harmed by purportedly not having this information.

### 4. Chung's breach of fiduciary duty claim against Mr. McClellan and Ms. Pietrucha is duplicative of Count V and time-barred.

Chung also contends Mr. McClellan and Ms. Pietrucha breached their supposed fiduciary duties by denying Chung severance benefits prior to his termination in order to prevent his DEPP benefits from vesting. (*See* SAC ¶ 150.) As explained above, there was no such decision (s*ee supra* § V.D.2), but even if there was, Chung cannot transform a denial of benefits into a fiduciary breach claim, and this claim is time barred in any event.

Chung may only seek "appropriate equitable relief" to redress violations of ERISA, 29 U.S.C. § 1132(a)(3), and "relief under (a)(3) is typically not 'appropriate' when Congress has 'elsewhere provided adequate relief' for the plaintiff's injury." *Mohammed v. Prudential Ins. Co. of Am.*, No. 19 C 3258, 2020 U.S. Dist. LEXIS 141394, at *10 (N.D. Ill. Aug. 7, 2020) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)). "Courts in [the Northern District of Illinois] have read *Varity* and *Mondry* as permitting, if not mandating, dismissal of (a)(3) claims that duplicate (a)(1)(B) claims." *Mohammed*, 2020 U.S. Dist. LEXIS 141394, at *11 (citation omitted). "[A] denial of benefits, without more, does not constitute a breach of fiduciary duty that can be remedied under [§ 502(a)(3)]; that's what [§] 1132(a)(1)(B) is for." *Sumpter v. Metro Life Ins. Co.*,

683 F. App'x 519, 521 (7th Cir. 2017). Chung's claim that Mr. McClellan and/or Ms. Pietrucha breached their fiduciary duties by denying Chung severance benefits is duplicative of Count V, does not seek "appropriate" equitable relief, and should be dismissed. *See Mohammed*, 2020 U.S. Dist. LEXIS 141394, at *12.

Finally, even if Chung had a viable breach of fiduciary duty claim against Mr. McClellan or Ms. Pietrucha for denying him severance benefits, it is time-barred. (*See* Dkt. 194, 195, Affirmative Defense #14.)  ERISA plaintiffs must assert breach of fiduciary duty claims within three years of actual knowledge of the alleged breach. 29 U.S.C. § 1113(1). █████████████████ ████████████████████████████████████████████████. (SF ¶ 196.) Indeed, in August 2020 and March 2021, Chung (and his counsel) argued that the Severance Plan was not relevant and "inapplicable." (OC ¶¶ 40, 41; Dkt. 26-4.) Accordingly, any breach of fiduciary duty claim premised on the supposed failure to give Chung severance benefits expired on or about January 16, 2023. 29 U.S.C. § 1113(1). Chung did not assert this claim until November 2024—nearly two years too late. (*See* SAC, Count V.)

## VI.     CONCLUSION

The Court should grant summary judgment in favor of Defendants on all claims asserted in the Second Amended Complaint and award them such other relief it deems just and appropriate.

|  | /s/ *Emily S. Costin* |
|---|---|
| **ICE MILLER LLP** | **ALSTON & BIRD LLP** |
| Daniel J. Polatsek | Emily S. Costin (*pro hac vice*) |
| Daniel.Polatsket@icemiller.com | D.C. Bar No. 500201 |
| Kyle T. Finnegan | David R. Godofsky (*pro hac vice*) |
| Kyle.Finnegan@icemiller.com | D.C. Bar No. 469602 |
| 200 West Madison, Suite 3500 | The Atlantic Building |
| Chicago, Illinois 60606 | 950 F. Street, NW |
| Tel: (312) 726-1567 | Washington, DC 20004-1404 |
|  | Tel: (202) 239-3300 |
|  | Fax: (202) 239-3333 |
|  | Emily.costin@alston.com |
|  | David.godofsky@alston.com |

R. Blake Crohan (*pro hac vice*)
GA Bar No. 512642
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777
blake.crohan@alston.com

Margaret E. Saathoff (*pro hac vice*)
TX Bar No. 24141796
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Tel: (214) 922-3460
Fax: (214) 922-3899
ellie.saathoff@alston.com

*Counsel for Defendants*